**UNITED STATES DISTRICT COURT**
<u>**FOR THE NORTHERN DISTRICT OF NEW YORK**</u>

| | | |
|---|---|---|
| **WILLIAM CASTLE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | C.A. No. <u>5:19-CV-667 [BKS/TWD]</u> |
| | ) | |
| **3M COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**COMPLAINT AND JURY DEMAND**</u>

The Plaintiff, William Castle, by and through the undersigned counsel, hereby files this Complaint against the Defendant, 3M Company, in this litigation and states as follows:

<u>**PARTIES**</u>

1.     Plaintiff William Castle is an individual residing in the State of New York, County of Madison.

2.     Defendant 3M Company is an entity with its principal place of business located at 3M Center, Bldg. 224-5N-40, St. Paul, Minnesota 55144. Defendant 3M Company is registered to transact business in the State of New York and may be served with process on its registered agent, Corporation Service Company located at 80 State Street, Albany, New York 12207.

<u>**JURISDICTION AND VENUE STATEMENT**</u>

3.      Plaintiff William Castle is and was a resident of the State of New York at all times relevant to this case.

4.      Defendant 3M Company ("3M") is organized under the laws of Delaware and has its principal place of business in Minnesota.

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.

6.      Defendant 3M Company designed, manufactured and sold or otherwise placed dual-ended Combat Arms™ earplugs into the stream of commerce, including transactions with and distribution to United States Military bases and servicemembers located in New York. Defendant knew at all times during the design, manufacture and sale of the dual-ended Combat Arms™ earplugs that the products in question would travel among and through each and every state, including New York, and Defendant should have reasonably anticipated the need to answer suit arising out of the manufacture, design, and sale of these dual-ended Combat Arms™ earplugs in New York. Defendant's contacts with the State of New York are systematic, ongoing, and sufficient to support the proper exercise of personal jurisdiction over them.

7.      Additionally, and in the alternative, Defendant 3M purposefully availed itself to business dealings in the State of New York and could reasonably expect to respond to complaints therein. Defendant's purposeful availment of the benefit and protection of the laws of New York is sufficient to support proper exercise of personal jurisdiction over Defendant.

8.      Venue is proper in the Northern District of New York because it is the judicial district in which a substantial part of the acts or omissions giving rise to the causes of action occurred. 28 U.S.C. § 1391(b)(2).

## BACKGROUND FACTS

9.      Plaintiff, William Castle, is an Army combat veteran. Throughout his military service, Plaintiff was stationed at Fort Benning, Georgia for basic training and Fort Campbell, Kentucky for one year of combat training. Plaintiff was also deployed to Afghanistan for combat for one

year.

10.      While serving at Fort Campbell, Kentucky, Plaintiff was first issued dual-ended Combat Arms™ earplugs, which were subsequently reissued many times throughout his Army career, designed, manufactured, marketed and sold by Defendant 3M Company. As a result of using these defective earplugs during combat and training, Mr. Castle continues to suffer daily from tinnitus, hearing loss, and other damages.

11.      In July 2018, Defendant 3M agreed to pay $9.1 million to resolve allegations that it supplied the United States with defective dual-ended Combat Arms™ earplugs. *See United States of America ex rel. Moldex-Metric, Inc. v. 3M Company*; In the United States District Court for the District of South Carolina, Columbia Division; Case No. 3:16-1533-MBS. In that case, the United States alleged that 3M, and its predecessor, Aearo Technologies, Inc., knew the dual-ended Combat Arms™ earplugs were too short for proper insertion into users' ears and that the earplugs could loosen imperceptibly and therefore did not perform well for certain individuals. The United States further alleged that 3M did not disclose this design defect to the military. The petition in that case is attached at Exhibit A and is incorporated by reference herein.

12.      Defendant 3M's dual-ended Combat Arms™ earplugs, which are non-linear, or selective attenuation, earplugs, were designed to provide soldiers with a single set of earplugs that offer them two options for hearing attenuation depending upon how the plugs are worn. If worn in the "closed" or "blocked" position, the earplugs are supposed to block sound like traditional earplugs. If worn in the "open" or "unblocked" position, the earplugs are supposed to block, or at least significantly reduce, loud impulse sounds of battlefield explosions, while still allowing the wearer to hear quieter noises such as commands spoken by fellow soldiers and approaching enemy combatants. These earplugs were originally created by a company called Aero Technologies ("Aearo"). 3M acquired Aearo in 2008 (and thus any liability associated with its past conduct) and hired the employees

3

at Aearo that developed and tested the defective earplugs. These 3M employees were aware of the defects as early as 2000, several years before 3M/Aearo became the exclusive provider of the earplugs to the military.

13.     As known to 3M/Aearo at the time it received the exclusive contract to supply earplugs to the military between 2003 and 2012, these earplugs have dangerous defects that can cause them to loosen in the wearer's ear, imperceptibly to the wearer and even trained audiologists visually observing a wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user and/or audiologist incorrectly believes that the earplug is working as intended. Because the stem of the dual-ended earplug is too short, it is difficult to insert the plug deeply into some wearer's ear canals and obtain a proper fit. Specifically, when the earplug is inserted into the ear according to standard fitting instructions, the basal edge of the third flange of the non-inserted end of the earplug is prone to press against some wearers' ear canals and fold back to its original shape, thereby loosening the seal in their ear canals. The defect has the same effect when either end is inserted because the earplugs are symmetrical. In either scenario, the effect is that the earplug may not maintain a tight seal in some wearers' ear canals such that dangerous sounds can bypass the plug altogether thereby posing serious risk to the wearer's hearing unbeknownst to him or her.

14.     These dangerous design defects were known to Aearo in 2000 (and later 3M) when it completed testing of the dual-ended Combat Arms™ earplugs.

15.     Despite this knowledge, in 2003, Aearo submitted a bid in response to the military's Request for Proposal to supply large quantities of these defective earplugs and entered into a contract pursuant to which it became the exclusive supplier of earplugs to the military.

16.     When Defendant Aearo/3M Company initially tested the dual-ended Combat Arms™ earplugs before becoming the exclusive supplier of military earplugs, the test subjects were

instructed to manipulate the earplugs due to the short stem so that it would achieve a satisfactory noise reduction rating. However, these same instructions to manipulate the dual-ended Combat Arms™ earplugs in this manner were not given to end users of the earplugs. Because of this, Plaintiff and other users of the dual-ended Combat Arms™ earplugs only used the earplugs according to the instructions provided by Defendant 3M Company, which did not instruct them to manipulate the earplugs to achieve a proper fit. As a result of not being properly warned or instructed as to how to wear the dual-ended Combat Arms™ earplugs, Plaintiff suffered damages.

17.      Further, the dual-ended Combat Arms™ earplugs manufactured by Defendant 3M Company deviated from the specifications promulgated by the U.S. Military, the American National Standards Institute, and the Environmental Protection Agency in a manner that rendered them unreasonably dangerous. Specifically, the U.S. Military's request for proposal issued to Defendant 3M Company requires that "[t]he ear plugs shall be free from all defects that detract from their appearance or impair their serviceability." The dual-ended Combat Arms™ earplugs, as manufactured, deviated from this specification in that, when they left control of Defendant, the dual-ended Combat Arms™ earplugs were difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. The defective manufacture of the dual-ended Combat Arms™ earplugs and their failure to conform with the required specifications directly and proximately caused Plaintiff's injuries.

### CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### STRICT LIABILITY—DESIGN DEFECT

18.      Plaintiff hereby incorporates all above paragraphs by reference as if fully set forth herein.

19.      The dual-ended Combat Arms™ earplugs at issue were originally designed,

manufactured, and sold by Defendant 3M Company. At the time the dual-ended Combat Arms™ earplugs in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing dual-ended Combat Arms™ earplugs, such as the ones in question, in the stream of commerce.

20.     At the time the dual-ended Combat Arms™ earplugs in question were designed, manufactured and sold by Defendant, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the dual-ended Combat Arms™ earplugs in question were a direct and proximate cause of the injuries to Plaintiff.

21.     The dual-ended Combat Arms™ earplugs reached Plaintiff in the condition expected and intended by Defendant.

22.     Plaintiff used the dual-ended Combat Arms™ earplugs for their intended and foreseeable purpose.

23.     The defects regarding the dual-ended Combat Arms™ earplugs include but are not limited to the stem of the dual-ended earplug being too short, so that it is difficult for users to insert the plug deeply into their ear canals and obtain a proper fit.

24.     Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the utility of the dual-ended Combat Arms™ earplugs.

25.     The dual-ended Combat Arms™ earplugs were defectively designed because the stem of the dual-ended earplugs was too short, so that it is difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. The inability to obtain a proper fit while using the dual- ended Combat Arms™ earplugs caused Plaintiff's injuries. Specifically, Defendant could have designed the dual-ended Combat Arms™ earplugs with a longer stem so that it would allow

users to insert the plug deeper into their ear canals and obtain a proper fit.

26.     Each alternative design for the above identified defects was available in the market and was technologically and economically feasible at the time the dual-ended Combat Arms™ earplugs were manufactured and would not have impaired the utility of the dual-ended Combat Arms™ earplugs.

27.     Further, at the time the dual-ended Combat Arms™ earplugs in question were sold, the defective design caused the product to unexpectedly fail to function in a manner reasonably expected by an ordinary consumer. The defective and unreasonably dangerous design of the dual-ended Combat Arms™ earplugs were a producing cause of Plaintiff's injuries.

28.     At the time of the incident made the basis of this lawsuit, the dual-ended Combat Arms™ earplugs were in the same or substantially similar condition as they were at the time they left Defendant's control and were placed into the stream of commerce. Any alterations to the dual- ended Combat Arms™ earplugs were made by a dealer and/or agent of Defendant.

29.     As a direct and proximate result of the design defect Plaintiff has experienced significant physical injury, mental and physical pain and suffering, permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages, loss of earning capacity, loss of earnings, pain and suffering, and other consequential damages.

### AS AND FOR A SECOND CAUSE OF ACTION
### STRICT LIABILITY—MANUFACTURING DEFECT

30.     Plaintiff hereby incorporates all above paragraphs by reference as if fully set forth herein.

31.     The dual-ended Combat Arms™ earplugs at issue were originally designed, manufactured, and sold by Defendant. At the time the dual-ended Combat Arms™ earplugs in

question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing dual- ended Combat Arms™ earplugs, such as the ones in question, in the stream of commerce.

32.     The dual-ended Combat Arms™ earplugs reached Plaintiff in the condition expected and intended by Defendant.

33.     Plaintiff used the dual-ended Combat Arms™ earplugs for their intended and foreseeable purpose.

34.     When they left control of Defendant, defects in the manufacture of the dual-ended Combat Arms™ earplugs rendered them defective and unreasonably dangerous in that the dual-ended Combat Arms™ earplugs were difficult for users to insert the plug deeply into their ear canals and obtain a proper fit due. In particular, the stem of the dual-ended Combat Arms™ earplugs was too short, so that it is difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. The defective manufacture of the dual-ended Combat Arms™ earplugs directly and proximately caused Plaintiff's injuries.

35.     As a direct and proximate result of the manufacturing defect Plaintiff has experienced significant physical injury, mental and physical pain and suffering, permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages, loss of earning capacity, loss of earnings, pain and suffering, and other consequential damages.

## AS AND FOR A THIRD CAUSE OF ACTION
## STRICT LIABILITY—FAILURE TO WARN

36.     Plaintiff hereby incorporates all above paragraphs by reference as if fully set forth herein.

37.     The dual-ended Combat Arms™ earplugs that injured Plaintiff were originally

designed, manufactured, and sold by Defendant. At the time the dual-ended Combat Arms™ earplugs in question were sold, Defendant was in the business of designing, manufacturing, testing, assembling, monitoring, selling, and/or otherwise placing dual-ended Combat Arms™ earplugs, including the dual-ended Combat Arms™ earplugs at issue and their defective condition, which was the proximate cause of Plaintiff's injuries.

38.     The dual-ended Combat Arms™ earplugs reached Plaintiff in the condition expected and intended by Defendant.

39.     Plaintiff used the dual-ended Combat Arms™ earplugs for their intended and foreseeable purpose.

40.     Due to the design and manufacture of the dual-ended Combat Arms™ earplugs, the dual- ended Combat Arms™ earplugs were not reasonably effective at reducing noise. The failure to appropriately design and manufacture the dual-ended Combat Arms™ earplugs which contributed to the ineffectiveness of the dual-ended Combat Arms™ earplugs in reducing noise was the direct and proximate cause of Plaintiff's injuries. Accordingly, Defendant should be held strictly liable.

41.     Defendant placed the defective dual-ended Combat Arms™ earplugs into the stream of commerce and expected or could reasonably foresee the use of said dual-ended Combat Arms™ earplugs by individuals, such as Plaintiff, in the condition in which the dual-ended Combat Arms™ earplugs were designed, manufactured and sold.

42.     The dual-ended Combat Arms™ earplugs at issue were designed, manufactured and assembled so that the defective condition was undiscoverable at the time of use of the dual-ended Combat Arms™ earplugs.

43.     The defective condition of the subject dual-ended Combat Arms™ earplugs was not

observable by Plaintiff who relied upon Defendant to design, test, manufacture, sell and deliver the subject dual-ended Combat Arms™ earplugs in a condition fit for use for the purposes intended.

44.     Defendant failed to give adequate and proper warnings and instructions regarding the dangers of the dual-ended Combat Arms™ earplugs which rendered the product defective and unreasonably dangerous and was a producing cause of Plaintiff's injuries and damages. Specifically, Defendant failed to warn potential and actual users of the dangers and risk of the defects. Further, Defendant failed to provide adequate instructions to users regarding proper use of the dual-ended Combat Arms™ earplugs. Defendant's failure to warn was a proximate cause of Plaintiff's injuries and damages.

45.     As a direct and proximate result of the failure to warn Plaintiff has experienced significant physical injury, mental and physical pain and suffering, permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages, loss of earning capacity, loss of earnings, pain and suffering, and other consequential damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
## NEGLIGENCE

46.     Plaintiff hereby incorporates all above paragraphs by reference as if fully set forth herein.

47.     Defendant committed acts of omission and commission, which collectively and severally constituted negligence, and that negligence proximately caused Plaintiff's injuries. Defendant's acts or omissions constituting negligence include: i.) failing to properly design the dual-ended Combat Arms™ earplugs; ii.) failing to properly manufacture the dual-ended Combat Arms™ earplugs; iii.) failing to adequately test the dual-ended Combat Arms™ earplugs; iv) failing to

adequately market the dual-ended Combat Arms™ earplugs; v) failing to adequately instruct users in using the dual-ended Combat Arms™ earplugs; vi) failing to recall the dual-ended Combat Arms™ earplugs or, alternatively, to warn consumers of a known danger/defect in the dual-ended Combat Arms™ earplugs; vii) failing to disclose post-sale information known about dangers or defects in the dual-ended Combat Arms™ earplugs; viii) concealing known dangers associated with the dual-ended Combat Arms™ earplugs; and ix) failing to meet or exceed internal corporate guidelines.

48.     As a direct and proximate result of the negligence of Defendant, Plaintiff has **experienced significant physical injury, mental and physical pain and suffering,** permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages, loss of earning capacity, loss of earnings, pain and suffering, and other consequential damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

49.     Plaintiff hereby incorporates all above paragraphs by reference as if fully set forth herein.

50.     Defendant made assurances as described herein to the general public and members of the military that the **dual-ended Combat Arms™ earplugs** product was safe and reasonably fit for its intended purposes.

51.     The Plaintiff was issued and chose to use the **dual-ended Combat Arms™ earplugs** based upon the warranties and representations of Defendant regarding the safety, fitness and appropriateness of the product.

52.      The Plaintiff, and other members of the military, reasonably relied upon the express warranties and guarantees of Defendants that the **dual-ended Combat Arms™ earplugs** product was safe, merchantable, and reasonably fit for its intended purposes.

53.    Defendant breached these express warranties because the **dual-ended Combat Arms™ earplugs** product was unreasonably dangerous and defective as described herein and not as Defendant had represented.

54.    Defendant's breach of its express warranties resulted in the implantation of an unreasonably dangerous and defective product.

55.    As a direct and proximate result of Defendant's breach of the aforementioned express warranties, the Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## BREEACH OF IMPLIED WARANTY

56.    Plaintiff hereby incorporates by reference all the above paragraphs as if fully set forth herein.

57.    Defendant impliedly warranted that the **dual-ended Combat Arms™ earplugs** were merchantable and was fit for the ordinary purposes for which it was intended.

58.    When the **dual-ended Combat Arms™ earplugs** were used by the Plaintiff to help prevent damage to his ear and hearing the product was being used for the ordinary purpose for which it was intended.

59.     Plaintiff, and other members of the military, relied upon the implied warranties of merchantability of Defendant in choosing to use and rely on the **dual-ended Combat Arms™ earplugs**.

60.     The Defendant breached these implied warranties of merchantability because the **dual-ended Combat Arms™ earplugs** used by the Plaintiff was neither merchantable nor suited for their intended uses as warranted.

61.     Defendant's breach of their implied warranties resulted in the using an unreasonably dangerous and defective product that placed Plaintiff's health, specifically his hearing, in jeopardy.

62.     As a direct and proximate result of Defendant's breach of the aforementioned implied warranties, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

## **DAMAGES**

63.     Plaintiff as a result of the aforementioned acts and/or omissions of the Defendant seeks compensation for the following damages:

      a.     Past and future medical expenses;

      b.     Past and future physical pain and suffering of Plaintiff;

      c.     Past and future physical disfigurement suffered by Plaintiff;

      d.     Past and future physical impairment suffered by Plaintiff;

      e.     Past and future mental anguish of Plaintiff;

      f.     Past lost earnings;

      g.     Future lost earnings capacity of Plaintiff;

h.      Costs of litigation;

i.      Punitive damages; and

j.      Any and all other damages in which Plaintiff may be justly entitled.

**WHEREFORE**, Plaintiff William Castle demands judgment for damages, including punitive, from Defendant 3M Company for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) together with interest and costs.

<u>**REQUEST FOR JURY TRIAL**</u>

The Plaintiff herein request trial by jury of all issues triable by right.

Dated June 4, 2019                          GATTUSO & CIOTOLI, PLLC

                                    By:  <u>Frank S. Gattuso, Esq. /s/</u>

                                    The White House
                                    7030 East Genesee Street
                                    Fayetteville, New York 13066
                                    (315) 299-6350
                                    (315) 446-7521
                                    fgattuso@gclawoffice.com